(36 Misc. Rep. 456.)

### BERNHEIMER v. SCHMID.

(Supreme Court, Special Term, New York County. December, 1901.)

1. PARTNERSHIP ASSETS—EVIDENCE.
　　Where partners have disagreed as to whether real estate occupied by the firm is partnership property, parol evidence is admissible to show the object with which the property was acquired.

2. SAME—REAL ESTATE.
　　Where real estate has been paid for by the money of the individual partners of the firm, and the firm agreement states that one of them is the owner of an undivided half of the premises, and stipulates for payment of rent to each owner as lessee, and the real estate is entered in the firm books under a lease account, it is not partnership property.

3. PARTNERSHIP ACCOUNTING—RECEIVER.
　　Where a partner sues to dissolve a firm, and a decree for an accounting is made, and there is no provision in the partnership contract for a division of the property, the court can appoint a receiver by an interlocutory decree without application therefor at special term.

Action by Simon E. Bernheimer against Josephine Schmid praying for a dissolution of partnership, and the appointment of a receiver, and sale of the partnership assets, and a division between the parties. Decree for an accounting and appointment of referee.

The answer objects to the sale of part of the lands, which the defendant claims to be individual, and not copartnership, property. The defendant, in his answer, also prays for an accounting, judgment against the plaintiff for an amount estimated at $500,000; for damages on account of improvident loans of copartnership funds, an injunction against the making by him of any further loans of those funds, and a division of the property of the copartnership, except the good will and trade-marks, which she insists that each partner should be allowed to use after the dissolution; together with general relief. The defendant joined in the prayer for a receiver.

Wetmore & Jenner (William A. Jenner, of counsel), for plaintiff.
Ashbel P. Fitch (John E. Parsons and Roger Foster, of counsel), for defendant.

LAWRENCE, J. The allegation in the fourth paragraph of the complaint that the plaintiff and defendant became seised as tenants in common each of the undivided half of the property therein described "for the uses of the said copartnership and for the protection of the copartnership interest in the buildings which had theretofore been erected by said copartnership of plaintiff and defendant, and said predecessor copartnership thereon, and the brewery, machinery, and plant contained therein, and which had been placed therein by said copartnership of plaintiff and defendant and said predecessor copartnership, and for the protection and benefit of the copartnership business, and were dedicated by the plaintiff and defendant respectively to the uses of the copartnership," is denied by the second paragraph of the answer, and it is alleged "that rent for the use and occupation of said lands has been regularly paid by said copartnership between the plaintiff and defendant to the plaintiff and defendant individually during each year that said copartnership has used and occupied, said lands as a tenant of the same." It is further averred that the "said lands are not a part of the copartnership stock or capital, that they are not a part of the copartnership assets, and that rent for the use and occupation of the same is due by said copartnership to the plaintiff and defendant individually." It was in reference to this issue that a large portion of the testimony taken upon the trial was directed, the defendant objecting, in the first instance, that the oral evidence given by the plaintiff to sustain his allegation was inadmissible; and, further, that, conceding its admissibility, it proves the intention of the parties that the land which they acquired individually should not become the property of the firm. It has been definitely settled in this state that the question whether real estate is partnership property may be determined on parol evidence, independent of the particular form which the transaction took or the name in which the title was taken. Fairchild v. Fairchild, 64 N. Y. 471, 477; Greenwood v. Marvin, 111 N. Y. 423, 19 N. E. 228; Chester v. Dickerson, 54 N. Y. 1, 13 Am. Rep. 550. I therefore am of the opinion that the parol evidence which I received was competent under the issue raised as to the character and

object of the ownership of the real estate in question. Whether that evidence substantiates the plaintiff's contention in respect to such real estate is a different question. The court of appeals, in Fairchild v. Fairchild, 64 N. Y. 477, say:

"Real estate purchased for partnership purposes and appropriated to those purposes, and paid for by partnership funds, becomes partnership property, and it is not material in what manner or by what agency the land is purchased, or in what name it stands. If it be established that it belongs to the partnership, equity will hold the one in whom is the legal title as trustee for the partnership. T. Pars. Partn. 363. When the land is conveyed to the several partners, it is not indispensable that it should be actually used for partnership purposes, nor that a positive agreement should be proved making it partnership property. If it has been paid for with partnership effects, it is then a question of intention whether the conveyance is to have its legal effect, and the parties are to be treated as tenants in common, or whether the land is to be treated as partnership property. The manner in which the accounts are kept, whether the purchase money was severally charged to the members of the firm, or whether the accounts treat it the same as other firm property, as to purchase money, income, expenses, etc., are controlling circumstances in determining such intention, and from these circumstances an agreement may be inferred.".

Collumb v. Read, 24 N. Y. 511.

Tested by the rule thus laid down, I do not think that it can be said upon the evidence in this case that the plaintiff and defendant were other than tenants in common of the property mentioned in the fourth paragraph of the complaint, or that said property is to be regarded in equity as partnership property. The partners have always been paid rent for the undivided half of the property of which each was the owner. The oral conversations which took place between the parties prior to the execution of the partnership articles dated December 1, 1893, do not satisfy me that it was the intention of either party to change the ownership of tenants in common to that of copartners. The plaintiff became, after the conveyance to him of the interest which his uncle, Simon Bernheimer, had in the premises, simply the successor to that uncle's title to the undivided half of those premises, and the relation of lessor and lessee which had existed between the uncle and the partnership was continued between the plaintiff and the firm and between the firm and the estate of August Schmid; and after Mrs. Schmid acquired her title the relation of landlord and tenant existed between her and the firm. That such was the intention of the parties is, I think, clear, in the first place, from the fact that the purchases made by the plaintiff and by the defendant were not paid for out of the firm property or assets. They were paid for out of the funds of the individual partners. It will be recollected that one of the controlling facts, under the decisions above referred to, in ascertaining whether certain property is to be deemed partnership property when standing in the name of an individual partner, is whether it has been paid for out of the partnership funds. On the question of intention the agreement of December 1, 1893, which was executed after the conversation between the plaintiff and defendant referred to by the plaintiff and the witness Mr. Max Bernheimer, is very significant. In that agreement it is stated that the plaintiff "is the owner of the

undivided one-half part of the premises in question," and "that the copartnership hereby formed shall be and become, during the term of the copartnership hereby formed, the lessees of the said premises, * * * and the copartnership hereby formed shall pay as rent therefor to the party of the first part, as the owner of the undivided one-half part thereof, the annual rent of $27,000 per annum, and to Josephine Schmid, as the executrix of and trustee under the will of August Schmid, deceased, the annual rent of $27,000 per annum; said rent to be paid in semiannual installments on the first days of June and December in each year." The partnership was also to pay taxes and assessments and Croton water rents during the term of the copartnership, and to keep the premises reasonably insured. That agreement was extended on January 21, 1895, for two years from December 1, 1895, to December 1, 1897. (See plaintiff's Exhibit C.) I am of the opinion, therefore, that it was the intention of the parties that they should hold this property according to the legal effect of the conveyances to them, respectively, as tenants in common, for which rent was to be paid to the partners, and that the same is not to be regarded as a partnership asset. Furthermore, the property is entered in the books of the firm under the lease account, which indicates still more strongly that the parties intended that the character of the ownership of the land should not be changed by any conversations between them. It is true that it is shown that certain improvements upon the property have been paid for by the firm. But such was the fact before the plaintiff acquired the title of his uncle, Simon Bernheimer, to the one undivided half of the premises, and it is shown to have been the intention of the parties to the lease from Simon Bernheimer that the buildings, upon the expiration of that lease, should belong to him.

It is claimed by the defendant that the amount expended by the firm on the building account was much less than the amount stated in the testimony of Mr. Max Bernheimer, and it would appear that since the plaintiff acquired his title there has been much less expense than when the title to one-half of the property was in the uncle and the lease from him to the firm was existing. In such case the expenditure for building is not, in my judgment, controlling in determining whether the character of the title to the land was different from that expressed in the partnership articles of December 1, 1893. The case of Van Brunt v. Applegate, 44 N. Y. 544, was a case in which the conveyance was made by Westervelt to Welch of one-half the property for the express purpose of forming the partnership, and it was held that under the circumstances the real estate was to be regarded as partnership property. There, too, it appeared that the rent accounts were entered upon the books as a part of the partnership assets, and that the subsequent conveyance by Welch was made in payment of a debt owing by the partnership; and it was held that, although the firm was insolvent, as the creditor had no knowledge of the insolvency, the conveyance could not be attacked by a receiver appointed in an action for dissolution of the copartnership. In this case the partnership is not insolvent, and the question is not between the creditors of an insolvent concern.

The question is as to the rights of the respective parties under the articles of copartnership, and I do not understand that a court of equity can alter or modify the terms of an agreement which the partners have made between themselves.

The case of Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252, and similar cases, which have been referred to by counsel, I do not regard as in point, for the reason that in those cases there had been some underhand advantage taken by one partner of the other, and the court held that the partner who had sought to obtain such advantage could not avail himself of his own wrong. In Mitchell v. Reed the leases of a hotel, which was occupied for partnership purposes, were about expiring, and the defendant secretly, without the knowledge of the plaintiff, obtained from the landlord a renewal of the leases in his own name; but the court held that the leases so taken were obtained in fraud of the rights of the copartner, and inured to the benefit of the firm. In this case there can, I think, be no fraud or wrong imputed to the defendant. The conveyance to the plaintiff by Simon Bernheimer and the conveyance of the surviving heir of August Schmid to the defendant show upon their face that each was made to the grantee individually, and not to the firm. There was no concealment practiced in obtaining those conveyances, nor as to their contents or provisions. I am therefore of the opinion that there should be an accounting between these parties, in order that their respective rights and interests in the assets of the firm can be ascertained.

2. On the trial the defendant offered no evidence, but, when the plaintiff rested, her counsel said that, as the plaintiff asked for a receiver, the defendant joined in the request. Much testimony was taken which might have been reserved until an accounting before a referee had been had, but it was allowed by the court in order that a full history of the case could be obtained. The plaintiff claimed that the court had no power, under such circumstances, to appoint a receiver; that a motion at special term would have been the regular and proper procedure for that purpose. Although it is almost a matter of course to appoint a receiver in partnership cases, the parties were allowed to submit briefs upon that point. The learned counsel for the plaintiff now strenuously contends that it is not in the power of the court to appoint a receiver. As the case has been tried, and an interlocutory decree can be entered to direct an accounting and for such other purposes as to the court may seem proper, I do not think that this position is tenable. The case of Philipp v. Von Raven, 26 Misc. Rep. 553, 57 N. Y. Supp. 701, was a motion made on affidavits, and before trial, and under the circumstances the learned justice who heard the case deemed it inexpedient to grant the motion, and allowed the business to proceed under the direction of one of the partners, upon his giving proper security. Here there has been a trial, and it is evident that, if the business is to be wound up, there must be a receiver during the winding up. Dusenbury v. Dusenbury, 4 Civ. Proc. R. 126, is also a case in which the motion was made before trial, apparently upon the pleadings alone. The case of McElvey v. Lewis, 76 N. Y. 373,

is a direct authority that where in a copartnership agreement no time is named for its continuance, and no provision made for the division of the property, it was proper to appoint a receiver. I do not understand that section 1947 of the Code of Civil Procedure has in any way abridged the power of the court to appoint a receiver where a trial has been had. As the concern is solvent, as I have several times stated to counsel, it would be most agreeable to the court if the parties would agree upon a proper person to act as receiver in the meantime; and although, from the differences between the parties, it is apparent to me that such an appointment is necessary, I shall give them a further opportunity to come to such an agreement, or to submit, in case they cannot agree, the names of persons familiar with the business from whom a proper selection can be made.

An interlocutory decree will be entered directing an accounting between the parties, the appointment of a referee for that purpose, the appointment of a receiver in the meantime, and that upon the coming in of the report of the referee the partnership property be sold, and the rights of the parties finally adjusted. Draw decision and judgment accordingly, and settle on three days' notice.

Judgment accordingly.