## MOORE *v.* ROBERTSON *et al.*

(*Supreme Court, General Term, First Department.* December 31, 1891.)

**1. ASSIGNMENT—RIGHT OF ASSIGNEE TO SUE.**
The right of an assignee of a cause of action to sue thereon is not affected by the fact that he is liable to account to his assignor for moneys he may recover in the action.

**2. CONFLICT OF LAWS—ASSIGNMENT OF CHOSE IN ACTION.**
The English statute (36 & 37 Vict. c. 66, § 25, subd. 6) declaring assignments effectual to pass the legal title to the debt or chose in action assigned, after express notice of them in writing to the debtor, does not affect the right of an assignee under such an assignment, executed in England, to bring suit for the debt in New York, under the law of that state, against debtors resident therein at the time of the assignment and of the action.

**3. DEPOSITIONS—IRREGULARITY IN TAKING—USE IN EVIDENCE.**
Before the taking of testimony under a commission, the witnesses had read the interrogatories and cross-interrogatories, and talked about them with one another, and with their solicitor and others, and some of them had prepared written answers thereto; but such written answers were not used in taking the depositions, and they testified that their replies were not given by the advice or dictation of any one. *Held*, that their acts did not affect the value of the depositions as evidence. *Graham* v. *Carleton*, (Sup.) 9 N. Y. Supp. 393, distinguished.

**4. IMPLIED TRUSTS—RESCISSION OF PURCHASE OF CORPORATE STOCK.**
Defendants, the president and treasurer of a corporation, formed for refining sugar by electricity, induced certain stockholders thereof to buy from them additional shares by giving assurances that the money paid therefor would be used only to purchase the secret of a process represented to be used in refining sugar, in order that a patent therefor could be obtained for the company. Subsequently the parties discovered that no such process existed. The money received by defendants for such additional stock was loaned by them to the company, which, with their concurrence and in great part for their benefit, diverted it to other purposes. *Held* that, upon the purchasers of said stock electing to rescind their purchase and demanding the money paid, it was the duty of defendants to return the money, and they were personally liable for its misappropriation.

11 N. Y. Supp. 798, affirmed in part.

Appeal from special term, New York county.

Action by James Moore, assignee of George Page, Alfred Bigland, Robert Robinson, George F. Karck, and James Latham against James U. Robertson, William H. Cotterill, and Arthur D. Williams, as receiver of the Electric Sugar-Refining Company, for the rescission of purchases by plaintiff's assignors from defendants Robertson and Cotterill of certain shares of stock in said Electric Sugar-Refining Company. On trial at special term, judgment was rendered dismissing the complaint as against the receiver, and in favor of plaintiff as against defendants Robertson and Cotterill. See 11 N. Y. Supp. 798. Plaintiff appealed from so much of the judgment as dismissed the complaint as against the receiver, and that part of the judgment was reversed by the general term, and judgment ordered for plaintiff against the receiver. See 16 N. Y. Supp. 403. Defendants Robertson and Cotterill appeal from the judgment against them. Affirmed.

At the trial, the testimony of plaintiff's assignors, taken in England under a commission, was read in evidence. Alfred Bigland, whose deposition was

taken October 14, 1889, testified therein as follows: "I first saw the interrogatories propounded to me under commission, both direct and cross, on or about May 30, 1889, when I read them over in company with my cashier and book-keeper, Robert Laurie, he supplying me with all books and papers to enable me to get a clear understanding where my memory was deficient. I then drew up written answers, which I have committed to memory to a very large extent, and have taken no one's advice as to the answers which I should give. My solicitor has seen me with relation thereto, but carefully refrained from in any way dictating or helping me with regard to my replies. Neither in form or substance was any answer to these cross-interrogatories suggested to me by any person." James Latham, whose deposition was taken October 15 and 16, 1889, testified therein as follows: "I first saw the interrogatories and cross-interrogatories propounded to me under commission about the month of May or June, 1889. I spoke concerning them with my book-keeper, Mr. Reid, and asked him to assist me in correctly answering; which answers I took with me to the American consul, but the solicitor for the defendants objected to my using them. My book-keeper alone furnished me with dates from my cash-book to assist me in correctly answering the questions. Beyond that no suggestions have been made." George F. Karck, whose deposition was taken October 16, 1889, testified therein as follows: "I first saw a portion of the interrogatories and cross-interrogatories propounded to me under commission in June, 1889, but have not talked with any one in regard to them. No answer, in form or substance, to these cross-interrogatories has been suggested by any one." Robert Robinson, whose deposition was taken October 17, 1889, testified therein as follows: "I saw the interrogatories and cross-interrogatories propounded to me under commission, I should say three or four months ago. I have talked about them, in a general way, with Bigland, Page, and probably Karck. Such conversations were held at the office of our Liverpool solicitor, Mr. Sampson, who cautioned us that there should be no consultation as to what we should state; merely to look at the documents. All that was said and done was in a general way,—going over the telegrams and documents backwards and forwards. Neither the form or substance of any answer to these cross-interrogatories was suggested to me by any person whatsoever."

Argued before VAN BRUNT, P. J., and LAMBERT and DANIELS, JJ.

*R. Burnham Moffat,* for appellants. *Wheeler, Cortis & Godkin, (Everett P. Wheeler,* of counsel,) for respondent.

DANIELS, J. The assignments severally made to the plaintiff, of the assignors' respective rights of action, are full and complete, and were sufficient for that purpose, although the plaintiff will be liable to account to them for the moneys he may recover in the action. A point quite similar to this arose in the case of *Greenwood* v. *Marvin,* 111 N. Y. 423, 19 N. E. Rep. 228, where it was held, very much on the authority of *Sheridan* v. *Mayor, etc.,* 68 N. Y. 30, that this liability finally to account for the proceeds of the litigation would not deprive the assignee of the right to prosecute and maintain the action. And the English statute,[1] declaring such assignments, after express notice of them in writing shall have been given to the debtor, effectual to pass and transfer the legal title to the debt or chose in action from the date of such notice, in no way affects the application of that principle. It does not declare an assignment, without being followed by a written notice, in-

[1] The English judicature act of 1873 (36 & 37 Vict. c. 66, § 25, subd. 6) provides: "Any absolute assignment by writing  *  *  *  of any debt or other legal chose in action of which express notice in writing shall have been given to the debtor, or other person from whom the assignor would have been entitled to receive or claim such debt or chose in action, shall be effectual in law to pass and transfer the legal right to such debt or chose in action from the date of such notice."

valid, and cannot control the law of this state, of which the defendants then were, and since have continued to be, residents, sustaining such assignments, when they are brought, as these have been, within the scope and effect of this law. The objection taken to the right of the plaintiff to maintain the action was rightly overruled.

There appeared to have been no irregularity or abuse of the proceeding taken to obtain the evidence of the foreign witnesses by commission, and the effect of the depositions was not reduced by anything done in taking them. The case, therefore, differs from, and is not affected by, anything that was said in *Graham* v. *Carleton*, (Sup.) 9 N. Y. Supp. 393, where the deposition was very irregularly taken. The evidence supplied very ample proof of the fact that the assignors each severally purchased his shares of the stock of the Electric Sugar-Refining Company upon the assurances that the defendants, who were the president and treasurer of the company, would use the money paid as its price only to obtain the disclosure of the secret process represented to be used in the refinement of sugar, in order that a patent for that process could be obtained for the company, which would have enhanced the value of the company's shares. They were interested in securing that value, and parted with their money for that object, of which the defendants were well aware; and when the latter could not obtain information of that process, for the reason that it had no existence, but was a groundless fraud, it was their duty to return the money when these assignors elected to rescind their purchases, and demanded it, which they did upon the discovery of the fraud. The fact that there was no such process rendered all the shares of the company entirely worthless, and the offer made in the complaint to return those for which the money had been paid and received, complied with all the assignors were legally bound to do to render the rescission of their purchases complete. Each purchased a certain number of the shares for himself, and paid his own money for the purchase, and severally was vested with this right to rescind. The defendants, instead of holding the money for the benefit of these assignors, loaned it to the company, which, with their concurrence, and in great part for the defendants' benefit, diverted the money to other objects; and for that it was just and right that they should be, as they were, personally charged with the liability themselves to refund the money which was misappropriated under their authority. In the disposition of the case at the special term, and the decision of the appeal of the plaintiff from so much of the judgment as dismissed the complaint, so far as it included the receiver of the company, several subjects now discussed have been further examined, and what has been there said does not required to be repeated. But it is sufficient to add that the plaintiffs' right to recover against these defendants was well sustained, and the judgment, so far as they have appealed from it, should be affirmed, with costs. All concur.